Fort Orange Paper Company v. Commissioner.
Ft. Orange Paper Co. v. Commissioner
Docket No. 71962.
United States Tax Court
T.C. Memo 1960-170; 1960 Tax Ct. Memo LEXIS 119; 19 T.C.M. (CCH) 917; T.C.M. (RIA) 60170; August 26, 1960
*119 Robert C. Poskanzer, Esq., 90 State Street, Albany, N. Y. and Albert Hessberg, II, Esq., for the petitioner. William F. Chapman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent's determination of a deficiency in income tax for 1954 of $6,861.16 is due in large part to his disallowance of a deduction claimed by petitioner for payments to the widow of petitioner's deceased president. This is the only issue. Findings of Fact Some of the facts have been stipulated. They are hereby found. Petitioner, Fort Orange Paper Company, is a corporation organized under the laws of the State of New York, with its principal office at Castleton-on-Hudson, Rensselaer County, New York. It filed its tax return for the year in issue with the district director of internal revenue for the Albany, New York, district. For more than 50 years petitioner was engaged in the manufacture of paperboard and packing cartons. William G. Latham was employed by petitioner in 1911, at the approximate age of 15 years, originally in the storeroom. On June 25, 1920, he was elected a director and junior vice president of petitioner, and a member of *120 the executive committee, and on October 15, 1921, vice president. On August 21, 1928, Latham was elected senior vice president of petitioner, and served as president from March 28, 1929 until August 20, 1935, and from June 16, 1936 until November 9, 1953. He died on November 9, 1953, at the age of 57, as a result of an accident at petitioner's plant. From about 1945 until the time of his death, Latham had received an annual salary of $30,000 per year. At a meeting of the board of directors of Fort Orange Paper Company, held on November 23, 1953, a resolution was adopted, expressing the sense of deep loss sustained by petitioner and the obligation owing to Latham by reason of his long and valuable service. On the same day, a motion was passed calling for payment to Dorothy M. Latham, widow of petitioner's president, as an honorarium, for a period of 6 months, the salary previously paid to Latham. Robert S. Harris, who had been employed by petitioner since about 1911, succeeded Latham as president of petitioner and remained in such capacity until about November 1, 1955. Harris' ultimate responsibility for corporate activities while serving as president was the same as Latham's *121 had been. Harris' annual salary as president of petitioner was $30,000 a year. The board of directors of petitioner, at its meeting on November 23, 1953, in voting the equivalent of her late husband's salary for 6 months was concerned with Mrs. Latham's welfare, and took into consideration the compensatory factor, past practice of petitioner, its sense of moral obligation and recognition of the character and length of service rendered by Latham. At the time of his death Latham had been paid his entire salary. In 1953, petitioner had no pension, retirement, severance, nor stock option plan. Latham and members of his family owned 25 per cent of the outstanding shares of stock of petitioner. The other 75 per cent was owned by persons and corporations, none of whom was directly or indirectly related to Latham. On April 19, 1943, Peter C. Brashear, then chairman of the board of petitioner, died. No executive officers of petitioner died between 1943 and Latham's death. Brashear's widow was paid $1,000 a month, the equivalent of his salary, for 6 months following his death. Respondent determined that the payments to Latham's widow were not deductible by petitioner. Opinion *122 We regard this controversy as controlled in principle by , reversed other issue (C.A. 2) (July 29, 1960), which respondent makes no effort to distinguish. Here, it is true, Latham, the deceased officer, and members of his family owned 25 per cent of petitioner's stock. But this holding did not represent control and it is stipulated that the remaining shares were owned by wholly unrelated interests. Nor can it be determinative that there is no showing of a previous inadequate salary. The significance of this factor is balanced under the present facts by the manner and suddenness of Latham's death, resulting from an accident at petitioner's factory. What we said in , seems equally applicable here: The motives for making the payments here involved are ambiguous and multiple; such is often the case. In (C.A. 3, 1955), it was noted that "the employer in providing the questioned payments did not indicate unequivocally whether such action was intended as additional compensation for past services, *123 or merely as an expression of a philanthropic attitude, or as a bid for employee good will, or as some combination of these." In the instant case, we find that the payments to Sheeran's widow were intended in part as additional compensation for past services rendered by Sheeran, in part to show gratitude for such past services, and in part to aid in the support of Sheeran's widow. We have made similar findings in this proceeding which need not be repeated here. We intimate no opinion as to the tax status of the payment in the hands of the widow. As in , the deduction by the corporate employer should have been allowed. Due to uncontested adjustments, Decision will be entered under Rule 50.